UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

ARCH ALUMINUM
& GLASS CO., INC., et al.[1].

_____/

Case No. 09-36232-BKC-JKO

Chapter 11
(Jointly Administered)

**NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES AND SCEHDULING
FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On the evening of November 25, 2009 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").  On December 2, 2009, the Debtors filed a motion (the "Sale Motion") with the Bankruptcy Court seeking, among other things, an order of the Bankruptcy Court (a) approving that certain Asset Purchase Agreement (the "Purchase Agreement"), dated December 2, 2009, by and among the Debtors, as sellers, and Arch Glass Acquisition Corporation, as buyer (the "Stalking Horse Bidder"), for the purchase and sale of the Purchased Assets (as defined in the Purchase Agreement); (b) authorizing the Debtors to execute and deliver the Purchase Agreement; (c) establishing bidding procedures for the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests (the "Bidding Procedures"); (d) authorizing the Debtors to provide certain stalking horse bid protections to the Stalking Horse Bidder; (e) scheduling a hearing to consider approval of the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests pursuant to the Purchase Agreement to the Stalking Horse Bidder or the highest and best bidder, if applicable, at an Auction (the "Sale Hearing"), (f) authorizing the Debtors' assumption and assignment of certain executory contracts and unexpired leases in connection therewith at the Sale Hearing, and (g) approving the form and manner of notice thereof.

2.      The Purchase Agreement contemplates the sale of the Purchased Assets to the Stalking Horse Bidder, subject to higher or better offers made pursuant to the Bidding Procedures.

_____

1       The proposed jointly administered debtors are: Arch Aluminum & Glass Co., Inc; AAG Holdings, Inc.; Arch Aluminum and Glass International, Inc.; Arch Aluminum, L.C.; and AWP, LLC.

3.     A hearing on the portion of the Sale Motion dealing with the Bidding Procedures and the related bid protections for the Stalking Horse Bidder was held before the Bankruptcy Court on December __, 2009, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures set forth in the Sale Motion (the "Bid Procedures Order") (D.E. # __).

4.     A copy of the Bid Procedures Order is attached hereto as Annex 1.  The Bid Procedures Order establishes the Bidding Procedures that govern the manner in which the Purchased Assets are to be sold.  All bids must comply with the Bidding Procedures and be submitted so as to be received not later than 5:00 p.m., Eastern Time, on January 8, 2010 (the "Bid Deadline").

5.     The complete Bidding Procedures are as follows:

a.  **Purchased Assets**. The "Purchased Assets" shall include those assets set forth in Section 2.01(a) of the Purchase Agreement.  The Purchased Assets shall not include the Excluded Assets set forth in Section 2.01(b) of the Purchase Agreement.

b.  **Qualification**. The Debtors shall: (a) coordinate the efforts of Potential Bidders (as defined below) in conducting their respective due diligence investigations regarding the Purchased Assets; (b) determine whether any person or entity is a Qualified Bidder (as defined below); (c) receive and evaluate bids from Qualified Bidders; and (d) administer the Auction (as defined below). Any person or entity who wishes to participate in the bidding process and the Auction must meet the participation requirements for Potential Bidders below and must thereafter submit a Qualified Bid to become a Qualified Bidder. Except as provided by applicable law or court order, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any person or entity who does not comply with the participation requirements below.

c.  **Participation Requirements**. To participate in the bidding process and the Auction, each interested person or entity (a "Potential Bidder") must deliver the following documents (the "Participation Materials") on or before five (5) business days prior to the Bid Deadline to (i) Genovese Joblove & Battista, P.A., counsel to the Debtors, 100 S.E. Second Street, 44th Floor, Miami, FL 33131, Attn: Paul J. Battista, Esq., pbattista@gjb-law.com, (ii) Piper Jaffray & Co., 800 Nicollet Mall, Minneapolis, MN 55402, Attn: Michael R. Dillahunt, michael.r.dillahunt@pjc.com, (iii) Moore & Van Allen, counsel to the Senior Lenders, 100 North Tryon Street, Suite 4700, Charlotte, NC 28292, Attn: James R. Langdon, Esq., jimlangdon@mvalaw.com, and (iv) Berger Singerman, counsel to Leon Silverstein, 200 South Biscayne Boulevard, Suite 1000, Miami, FL 33131 Attn: Daniel Lampert, Esq., DLampert@bergersingerman.com (the "Notice Parties"):

i.  an executed confidentiality agreement in form and substance satisfactory to the Debtors;

ii.  a statement demonstrating, to the Debtors' satisfaction, the Potential Bidder's bona fide interest in purchasing substantially all of the Purchased Assets from the Debtors;

iii.  written evidence acceptable to the Debtors that the Potential Bidder has received debt and/or equity funding commitments or has on deposit in its bank account(s) sufficient unrestricted cash to consummate the purchase contemplated hereby, provided that if the Potential Bidder proposes to finance the acquisition, then evidence of an unconditional lending commitment from a recognized banking institution in the amount of the cash portion of the purchase price of such bid or the ability to post an unconditional, irrevocable letter of credit from a recognized banking institution in the amount of the cash portion of the purchase price of such Bid;

iv.  A letter setting forth the identity of the Potential Bidder, the contact information for such Potential Bidder, and full disclosure of all parties participating with the Potential Bidder, as well as full disclosure of any prepetition and post-petition affiliation that the Potential Bidder may have with (i) the Debtors, (ii) the Debtors' affiliates, (iii) major creditors of the Debtors, (iv) equity security holders of the Debtors, and/or (v) any of the Debtors' former officers or directors or other insiders; and

v.  An executed letter acknowledging receipt of a copy of the Bidding Procedures and agreeing to accept and be bound by the provisions contained therein.

vi.  If, based on such Participation Materials, the Debtors determine that a Potential Bidder has a bona fide interest in purchasing the Purchased Assets, then no later than three (3) business days after the Debtors make that determination and have received from the Potential Bidder all of the Participation Materials required above, the Debtors will deliver to the Potential Bidder: (a) an electronic copy of the Purchase Agreement; and (b) access information for confidential data concerning the Purchased Assets, which shall include any and all documents furnished by the Debtors to the Stalking Horse Bidder in connection with its due diligence related to the Purchase Agreement (the "<u>Data Room</u>").

d.  **<u>Due Diligence Period</u>**. Until the Bid Deadline, the Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their judgment, determine to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Debtors. The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. If the Debtors determine that due diligence material requested by a Potential Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Potential Bidder, the Debtors shall post such materials in the Data Room and provide email notice of such posting to all Potential Bidders, as well as

to the Notice Parties, and shall provide such materials to the Stalking Horse Bidder. Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease on the Bid Deadline. Except as provided above with respect to the copy of the Purchase Agreement provided by the Debtors to the Potential Bidders, and information in the Data Room, neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any party.

e. **Bid Deadline**. A Potential Bidder that desires to make a bid on all or substantially all of the Purchased Assets (a "<u>Bid</u>") shall deliver written and electronic copies of its Bid and the Bid Requirements set forth below to (i) the Notice Parties, and (ii) counsel to the Official Committee of Unsecured Creditors (the "<u>Committee</u>") so that it is received not later than 5:00 p.m., Eastern Time, on January 8, 2010 (the "<u>Bid Deadline</u>"), provided however, that the Deposit shall be made to the trust account of Debtors' counsel pursuant to instructions to be provided by Debtors' counsel.

f. **Bid Requirements**. To participate in the Auction, if any, a Qualified Bidder must deliver to the Debtors a written offer, which must provide, at a minimum, the items noted below to be deemed a "<u>Qualified Bid</u>":

    i. An executed purchase agreement (a "<u>Marked Agreement</u>") in substantially the same form as the Purchase Agreement, pursuant to which the Potential Bidder offers to purchase substantially all of the Purchased Assets from the Debtors. Such Marked Agreement shall not contain any conditions to closing based upon the ability of the Potential Bidder to obtain financing, the outcome of unperformed due diligence by the Potential Bidder, or any other conditions other than those set forth in the Purchase Agreement. The Potential Bidder shall also provide a marked copy of the Marked Agreement showing any changes to the Purchase Agreement, including changes to reflect the name of the Potential Bidder and the amount of such Potential Bidder's Bid;

    ii. The purchase price in such Bid is a higher or better offer for the Purchased Assets as compared to the offer of the Stalking Horse Bidder. An offer shall not be considered a higher or better offer unless such Bid provides for the assumption of the same amount of liabilities that the Stalking Horse Bidder is assuming under the Purchase Agreement and provides for net consideration (on a risk-adjusted basis) to the Debtors' estates of at least $250,000.00 more than the sum of (i) the cash portion of the purchase price provided by the Stalking Horse Bidder in the Purchase Agreement, plus (ii) the amount of the Break Up Fee, plus (iii) plus the amount of the Expense Reimbursement (such amount, the "<u>Minimum Overbid Amount</u>").

    iii. A deposit of cash or cash equivalents in the amount equal to at least five (5%) percent of the Minimum Overbid Amount (the "<u>Deposit</u>"). The Deposit shall be tendered by cashier's check and/or wire transfer into a

segregated bank account established by Debtors' counsel. A Potential Bidder shall forfeit its Deposit if it is the Successful Bidder or Back-Up Bidder (as defined below) and (i) modifies or withdraws its Bid without the Debtors' consent before the consummation of the sale with such Potential Bidder or (ii) breaches the terms of the agreement pursuant to which the Bidder has agreed to purchase the Purchased Assets or a portion thereof. A Potential Bidder's Deposit shall be returned (i) if such Potential Bidder is determined by the Debtors not to be a Qualified Bidder, promptly upon the making of such determination, (ii) if such Potential Bidder is not the Successful Bidder or the Back-Up Bidder, promptly after the conclusion of the Auction, or (iii) if such Potential Bidder is the Back-Up Bidder and the sale transaction is consummated with the Successful Bidder, promptly upon the consummation of the sale with the Successful Bidder;

iv. The Bid is received by the Debtors by the Bid Deadline, together with the Potential Bidder's Deposit;

v. The Bid does not entitle the Potential Bidder to any break-up fee, termination fee or similar type of payment or reimbursement;

vi. A statement that the Bid is irrevocable and binding until the closing of the sale of the Purchased Assets if the applicable bidder is the Successful Bidder or the Back-Up Bidder;

vii. Evidence satisfactory to the Debtors of the Potential Bidder's (i) financial ability to close the sale described in its Marked Agreement, which may include the most recent audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring some or all of the Purchased Assets, current audited financial statements of the equity holder(s) of the Potential Bidder, and such other financial disclosure acceptable to, and requested by, the Debtors, and (ii) ability to consummate such sale on or prior to the date contemplated by and on the date and on terms and conditions no less favorable to the Debtors those set forth in the Purchase Agreement; and

viii. The Bid is accompanied by a list of any executory contracts and unexpired leases that are to be assumed and/or assigned under such Bid and a demonstration of the Potential Bidder's commitment to pay all Cure Costs in accordance with the Marked Agreement and provide adequate assurance of future performance under any such executory contracts or unexpired leases to be assumed and/or assigned pursuant to such Bid.

ix. A Potential Bidder shall accompany its Bid with: (a) written evidence acceptable to the Debtors that the Potential Bidder has received debt and/or equity funding commitments or has on deposit in its bank account(s) sufficient unrestricted cash to consummate the purchase contemplated hereby, provided that if the Potential Bidder proposes to finance the acquisition, then evidence of an unconditional lending commitment from a recognized banking institution in the amount of the

cash portion of the purchase price of such bid or the ability to post an unconditional, irrevocable letter of credit from a recognized banking institution in the amount of the cash portion of the purchase price of such Bid; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable Bid on the terms proposed; and (c) any pertinent factual information regarding the Potential Bidder's operations that would assist the Debtors in their analysis of issues arising with respect to any applicable antitrust laws or other aspects of the Bid.

g.  A Bid received from a Potential Bidder will be considered a "Qualified Bid" only if it meets the above requirements. Each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For purposes hereof and notwithstanding anything to the contrary provided herein, the Stalking Horse Bidder is a "Qualified Bidder" and the Purchase Agreement executed by the Stalking Horse Bidder and the Bid contained therein is a Qualified Bid.

h.  A Qualified Bid will be valued based upon the following factors: (a) the purported amount of the Qualified Bid, including any benefit to the Debtors' bankruptcy estates from any assumption of liabilities of the Debtors; (b) the ability to close the proposed sale transaction without delay and within the time frames contemplated by the Purchase Agreement; (c) the ability and delay associated with obtaining all necessary antitrust or other regulatory approvals, including under the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended, for the proposed transaction; and (d) any other factors the Debtors may deem relevant.

i.  As soon as reasonably practicable following the Bid Deadline but it no event later than noon Eastern Time on Monday, January 11, 2010, the Debtors shall distribute a copy of each Bid received by the Bidding Deadline, together with notice of which Bids the Debtors have determined are Qualified Bids, to the Notice Parties, to counsel for the Stalking Horse Bidder and to counsel to the Committee.  Any disputes as to whether a Potential Bidder is a Qualified Bidder shall be resolved by the Bankruptcy Court prior to the Auction. The Debtors reserve the right to reject any Bid if such Bid: (i) is on terms that are materially more burdensome or conditional than the terms of the Purchase Agreement; (ii) requires any indemnification of the Potential Bidder on terms that are materially more burdensome than the terms of the Purchase Agreement; or (iii) includes a noncash instrument or similar consideration that is not freely marketable. Any Bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid.

j.  **Auction.** In the event that the Debtors receive one or more Qualified Bids (other than the Bid of the Stalking Horse Bidder), then the Debtors will hold an auction (the "Auction") on January 13, 2010, commencing at 10:00 a.m. Eastern Time at [the offices of Genovese Joblove & Battista, P.A. at 100 S.E. 2nd Street, Suite 4400, Miami, Florida 33131][ United States Bankruptcy Court, 299 East Broward Blvd., Room 301, Ft. Lauderdale, FL 33301], for consideration of the Qualified Bids, each as may be increased at such Auction.  Bidding will start at the highest Qualified Bid and will continue with minimum Bid increments of $250,000. The

Auction may be adjourned as the Debtors deem appropriate. Reasonable notice of such adjournment and the time and place for resumption of the Auction shall be given to all entities that submitted a Qualified Bid. The Auction shall be conducted in accordance with the following procedures:

i. Only the Debtors, representatives of the Senior Lenders and their counsel, members of the Committee and its counsel, the Stalking Horse Bidder and any other Qualified Bidder, in each case, along with their representatives, shall attend the Auction in person, and only the Stalking Horse Bidder and such other Qualified Bidders will be entitled to make any Bids at the Auction.

ii. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale by the Debtors of the Purchased Assets;

iii. By 12:00 p.m. Eastern Time on January 12, 2010, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that, in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and Back-Up Bidder at the conclusion of the Auction.

iv. By 5:00 p.m. Eastern Time on January 12, 2010, the Debtors will notify the Stalking Horse Bidder and all Qualified Bidders that have informed the Debtors of their intent to participate in the Auction of which Qualified Bid(s) the Debtors believes, in their reasonable judgment, is the highest or best offer (the "Starting Bid").

v. Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

vi. At the Auction, the Debtors may employ and announce additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or any other applicable court entered in connection herewith and (ii) disclosed to each Qualified Bidder at the Auction.

vii. Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one

subsequent Bid or combination of Bids is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (such bid or combination of Bids, a "<u>Subsequent Bid</u>") and (ii) the Debtors determine that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental Bid or combination of Bids at the Auction shall provide net value to the Debtors' estates of at least U.S. $250,000 over the Starting Bid or the Leading Bid, as the case may be. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the Bid or combination of Bids that they believe to be the highest or otherwise better offer (the "<u>Leading Bid</u>"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.  Promptly at the conclusion of the Auction, the Debtors shall (a) determine, consistent with the Bidding Procedures, which Bid constitutes the highest or best Bid (such Bid, the "<u>Successful Bid</u>") and (b) communicate to the Stalking Horse Bidder, the Notice Parties, and the other Qualified Bidders the identity of the Successful Bidder(s) and the details of the Successful Bid(s). If no Qualified Bids are received other than the Purchase Agreement, the Purchase Agreement shall be designated as the Successful Bid, and there shall be no Auction. The Bidder making the Successful Bid is referred to as the "<u>Successful Bidder</u>." The determination of the Successful Bid by the Debtors at the conclusion of the Auction shall be final subject to approval by the Bankruptcy Court.

k.  **<u>The Back-Up Bid</u>**. After determining which Qualified Bid is the Successful Bid(s), the Debtors shall (a) determine which of the Qualified Bid constitutes the next highest or best Qualified Bid for the Purchased Assets and (b) communicate to the Stalking Horse Bidder, the other Qualified Bidders, and the other Notice Parties the identity of such Qualified Bidder(s) (a "<u>Potential Back-Up Bidder(s)</u>") and the details of such Qualified Bid(s) (a "<u>Potential Back-Up Bid(s)</u>"). In the event that the Potential Back-Up Bidder(s) agrees that (a) its/their Back-Up Bid(s) will remain irrevocable and (b) the Debtors may retain its/their Deposit, until the closing and effectiveness of the sale transactions, then such Potential Back-Up Bidder(s) shall be considered the "<u>Back-Up Bidder(s)</u>" and its/their Potential Back-Up Bid(s) shall be considered the "<u>Back-Up Bid(s)</u>". In the event of the failure by the Successful Bidder(s) to timely consummate the sale transaction, the Back-up Bidder(s) shall be deemed the Successful Bidder(s) without further order of the Court, and shall proceed to close the transactions contemplated by its/their Bid(s) no later than three (3) business days following the Debtors' tender of a notice to the Back-up Bidder(s), unless otherwise ordered by the Bankruptcy Court.  The Debtors shall be entitled to the Deposit of any Successful Bidder in circumstances described above, and in such circumstances, such Deposit shall be deemed forfeited by such defaulting Successful Bidder, and shall not be credited against the purchase price for the benefit of any Back-up Bidder. Similarly, in the

event that any Back-up Bidder fails to consummate the sale transaction, then the Debtors shall be entitled to the Deposit of said party, and such Deposit shall be deemed forfeited. The Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder and/or Back-up Bidder as the case may be, provided however, that any recourse against the Stalking Horse Bidder shall be strictly governed by the terms of the Purchase Agreement. If the Qualified Bidder(s) initially identified as the Potential Back-Up Bidder(s) do/es not agree to become the Back-Up Bidder(s), then such Potential Back-Up Bidder(s) shall be entitled to its/their Deposit(s) and the Debtors (and the Bankruptcy Court, to the extent there is a dispute), may identify the next highest or otherwise best Bid(s) as the Potential Back-Up Bid(s), and may continue to do so until Potential Back-Up Bidder(s) agree to become the Back-Up Bidder(s).

l.   **The Successful Bid**.  At the Auction, the Debtors shall have the right to select the highest and best Bid from the Auction, which will be determined by considering, among other things:  (A) the number, type and nature of any changes to the Purchase Agreement requested by each Qualifying Bidder; (B) the extent to which such modifications are likely to delay closing of the sale of the Purchased Assets and the cost to the Debtors of such modifications or delay; (C) the total consideration to be received by the Debtors; (D) the likelihood of the Qualifying Bidder's ability to close a transaction and the timing thereof; and (E) the net benefit to the estate, taking into account the Stalking Horse Bidder's rights to the Breakup Fee and Expense Reimbursement (for avoidance of doubt, the Debtors hereby agree that the value attributed by the Debtors to any Bid made by the Stalking Horse Bidder at the Auction shall include the requirement to pay the Break Up Fee and the Expense Reimbursement).

m.   **The Sale Hearing**. The Successful Bid will be presented to the Bankruptcy Court for approval at the Sale Hearing. If no other Qualified Bid is received by the Debtors, and the Stalking Horse Bid is the Successful Bid, then the Debtors will seek entry of an order at the Sale Hearing authorizing and approving the sale transaction, including the sale of the Purchased Assets to the Stalking Horse Bidder, pursuant to the terms and conditions set forth in the Purchase Agreement. If a different Qualified Bid is the Successful Bid, then the Debtors anticipate that they will seek the entry of an order, modified as necessary to reflect the terms of the Successful Bid, authorizing and approving the sale of the applicable Purchased Assets to the Successful Bidder. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of such adjournment at the Sale Hearing. Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on all matters relating to the proposed sale, and parties shall be prepared to present their evidence in support of or in opposition to the proposed sale at the Sale Hearing.

n.   **"As Is, Where Is"**. The sale transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates, except to the extent expressly set forth in the Purchase Agreement or the Marked Agreement corresponding to the Successful Bid, as the case may be. Except as otherwise provided in the Successful Bid, all of

the Debtors' right, title and interest in and to the Purchased Assets shall be sold free and clear of all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Successful Bidder, and the proposed order approving the sale transaction (as so defined therein, "Claims") as set forth in the Purchase Agreement and the Sale Order, with such Claims to attach to the net proceeds of the sale with the same validity and priority as such Claims applied against the Purchased Assets.

o. **Bankruptcy Court Jurisdiction**. Any and all disputes related or pertaining to or resulting or arising from the Bid Procedures, the Auction, the sale transaction and/or the conduct of the Debtors shall be adjudicated solely by the Bankruptcy Court. The submission of a Bid shall constitute an express consent by the Bidder to the exclusive jurisdiction of the Bankruptcy Court for all such matters.

p. **Break Up Fee**. In consideration of the Stalking Horse Bidder's undertaking of the substantial legal, accounting and other expenses attendant to the Purchase Agreement, proceeding toward the consummation of the sale transaction, and acting as the Stalking Horse Bidder, the Debtors have agreed to pay to the Stalking Horse Bidder (i) a fee of 3.0% of the Purchase Price (the "Break Up Fee") plus (b) reimbursement of up to $1.0 million in reasonable expenses incurred by Stalking Horse Bidder and determined by the Bankruptcy Court in connection with the Stalking Horse Bidder's due diligence (the "Expense Reimbursement"), which Break Up Fee and Expense Reimbursement shall be payable in accordance with the terms of the Purchase Agreement, including specifically through a "carve out" from the collateral securing the obligations owed to the Senior Lenders under the Prepetition Credit Agreement, as defined in the Purchase Agreement.

6.      The Sale Hearing is currently scheduled to be conducted on _____ (Eastern Time) at the United States Bankruptcy Court for the Southern District of Florida, 299 East Broward Blvd., Room 301, Fort Lauderdale, FL 33301 before the Honorable John K. Olson, United States Bankruptcy Judge, to consider the approval of the Purchase Agreement or any higher or better offer by a Successful Bidder (as defined in the Sale Motion). If the Purchaser is the Successful Bidder, the Debtors anticipate seeking entry of a Sale Order on the terms described in the Sale Motion and the Purchase Agreement (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

7.      **OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO THE PURCHASER OR ANOTHER SUCCESSFUL BIDDER TOGETHER WITH THE ASSUMPTION AND ASSIGNMENT OF CERTAIN**

EXECUORY CONRACTS AND UNEXPIRED LEASES (EACH, AN "<u>OBJECTION</u>"), MUST BE MADE IN WRITING, FILED WITH THE BANKRUPTCY COURT, AND SERVED SO AS TO BE ACTUALLY RECEIVED NO LATER THAN 12:00 P.M. EASTERN TIME ONE (1) BUSINESS DAY PRIOR TO THE SALE HEARING; PROVIDED, HOWEVER, THAT IF A DETERMINATION IS MADE AT THE SALE HEARING THAT THE SUCCESSFUL BIDDER IS A BIDDER OTHER THAN THE PURCHASER, PARTIES IN INTEREST MAY OBJECT SOLELY TO SUCH DETERMINATION AT THE SALE HEARING.

8.    ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH PARAGRAPH 7 ABOVE ON EACH OF THE FOLLOWING PARTIES:

(i) Genovese Joblove & Battista, P.A., counsel to the Debtors, 100 S.E. Second Street, 44th Floor, Miami, FL 33131, Attn: Paul J. Battista, Esq., <u>pbattista@gjb-law.com</u>;

(ii) Piper Jaffray & Co., 800 Nicollet Mall, Minneapolis, MN 55402, Attn:  Michael R. Dillahunt, <u>michael.r.dillahunt@pjc.com</u>, and

(iii) Moore & Van Allen, counsel to the Senior Lenders, 100 North Tryon Street, Suite 4700, Charlotte, NC 28292, Attn: James R. Langdon, Esq., <u>jimlangdon@mvalaw.com</u>.

9.    The Sale Order, if approved, shall authorize the assumption and assignment of various executory contracts and unexpired leases that are the property of the Debtors (collectively, the "<u>Designated Agreements</u>").  In accordance with the Sale Procedures Order, additional individual notices setting forth the specific Designated Agreements (or groups thereof) to be assumed by the Debtors and assigned to the Purchaser and the proposed cure amounts for such contracts will be given to all counterparties to Designated Agreements.

10.    The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the sale transaction contemplating the sale of the Purchased Assets to the Purchaser or another Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures, the Sale Motion, the Auction, the sale of the Purchased Assets, the Debtors' consummation and performance of the Purchase Agreement or other agreement with a different Successful Bidder (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all liens, claims, encumbrances and interests).

11.    This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:_____

GENOVESE JOBLOVE & BATTISTA, P.A.
Attorneys for Debtors-in-Possession
4400 Bank of America Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile : (305) 349-2310

By: ___/s/____Paul J. Battista_____
       Paul J. Battista, Esq.
       Florida Bar No. 884162
       pbattista@gjb-law.com
       Heather L. Harmon, Esq.
       Florida Bar No. 013192
       hharmon@gjb-law.com
       Michael L. Schuster, Esq.
       Florida Bar No. 57119
       mschuster@gjb-law.com