UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

In re:

ARCH ALUMINUM
& GLASS CO, INC., et al.

_____/

Case No. 09-36232-BKC-JKO

Chapter 11
(Jointly Administered)

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, AND 6006 (A) APPROVING ASSET PURCHASE AGREEMENT WITH ARCH GLASS ACQUISITION CORPORATION, AN AFFILIATE OF GREY MOUNTAIN PARTNERS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO ASSET PURCHASE AGREEMENT WITH ARCH GLASS ACQUISITION CORPORATION, (C) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (D) AUTHORIZING THE DEBTORS TO PROVIDE CERTAIN STALKING HORSE BID PROTECTIONS; (E) SCHEDULING A HEARING TO CONSIDER THE APPROVAL OF AND APPROVING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (F) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AT THE SALE HEARING, (G) APPROVING THE FORM AND MANNER OF NOTICE IN CONNECTION THEREWITH AND (H) GRANTING RELATED RELIEF**

COMES NOW the United States Trustee for Region 21, in furtherance of the administrative responsibilities imposed pursuant to 28 U.S.C. §586(a), and submits the following objections to the Debtors proposed bid procedures and sale (the "Sale Motion") in the above-styled Chapter 11 proceedings and in support thereof states as follows:

1.  The Sale Motion seeks Court approval to sell substantially all of the Debtors' assets to Arch Glass Acquisition Corporation ("Arch Glass" or "Stalking Horse Bidder") for a purchase price of $52,000,000 plus other considerations, including the assumption of certain liabilities.

2.  The Sale Motion further seeks approval for bidding procedures, should other interested parties seek to bid on the assets. The bid procedures, as contained in the Sale Motion,

provide for a break up fee of 3% of the Purchase Price ($1,560,000) (more akin to a "topping fee") plus up to $1,000,000 in reimbursement of expenses and an additional $250,000 in overbid protection for a total initial overbid of $2,810,100. The Motion provides that any subsequent bid shall be in increments of $250,000.

3. The break up fee, cost reimbursement and overbid is excessive and not in the best interests of the estates and its creditors. The proposed bid protection represents over 5.0% of the Purchase Price.

4. The "beak-up fee" is unreasonable and should be reduced. A break-up fee, "is an incentive payment to a prospective purchaser with which a company fails to consummate a transaction." In re S.N.A. Nut Company, 186 B.R. 98, 101(Bankr. N.D. Ill.1995) (quoting In re Integrated Resources, Inc., 147 B.R. 650, 653 (S.D.N.Y.1992)). Break-up fees exist to reimburse a "stalking horse's" out of pocket expenses related to a proposed purchase when the "stalking horse" is not the successful bidder. See In re APP Plus, Inc., 233 B.R. 870 (Bankr. E.D.N.Y. 1998). The break up fee typically covers "reimbursement of ...out of pocket expenses related to the proposed acquisition and/or compensation for the time, effort, resources, lost opportunity costs and risks incurred by the disappointed purchaser." Id at 874. Bankruptcy Courts should scrutinize proposed break up fees to determine whether the break up fee inappropriately burdens the bankruptcy estate or fails to protect the rights of interested parties. See In re America West Airlines, Inc., 166 BR 908 (Bankr. D. Ariz. 1994). Generally, breakup fees are allowed in sales of assets within a bankruptcy estate as long as they "enhance" the bidding. See S.N.A., 186 B.R. at 102. However, when a debtor conducts a sale of estate assets, the debtor has an obligation to maximize revenues for the estate. Id. at 104.

5.	The appropriate analysis under the Bankruptcy Code for the allowance of a break-up fee is based on a "best interest of the estate" test. See S.N.A., 186 B.R. at 104; In re O'Brien Environmental Energy, Inc., 181 F.3d 527 (3d Cir.1999); see also In re Hupp Industries, Inc., 140 B.R. 191, 196 (Bankr. N.D. Ohio 1992) (analysis of the proposed break-up fee must be analyzed to protect the Debtor's estate and the rights of all the parties in interest); America West, 166 B.R. at 912-13 (determining whether the proposed break-up fee makes economic sense and is in the best interest of the bankruptcy estate, its creditors, bondholders and shareholders).

6.	The "best interest of the estate" test centers on the protection of the estate and all parties involved under the circumstances of each case. In S.N.A, the Court based its analysis on "whether the interests of all concerned parties are best served by such a fee." 186 B.R. at 104; see also America West, 166 B.R. at 912; In re Hupp Industries, Inc., 140 B.R. 191, 194-96 (Bankr.N.D.Ohio 1992)[1]. The Court further stated that "bankruptcy courts should carefully scrutinize breakup fees to be sure that, following the underlying policy guiding § 363, revenues will be maximized." S.N.A., 186 B.R. at 104.

7.	When a transaction is out of the ordinary course of business, after notice and a hearing, it falls to the Bankruptcy Court to determine whether to approve the transaction based on

---

[1]The Hupp court listed seven factors to be considered in a determination of whether a breakup fee would be appropriate:  1) Whether the fee requested correlates with a maximization of value to the debtor's estate; 2) Whether the underlying negotiated agreement is an arms-length transaction between the debtor's estate and the negotiating acquirer; 3) Whether the principal secured creditors and the official creditors committee are supportive of the concession; 4) Whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price; 5) Whether the dollar amount of the break-up fee is so substantial that it provides a "chilling effect" on other potential bidders; 6) The existence of available safeguards beneficial to the debtor's estate; 7) Whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee. Hupp, 140 B.R. at 194.

the facts and history of the case. 11 U.S.C. 363(b); see also In re America West Airlines, Inc., 166 B.R. 908 (Bankr. D.Ariz.1994) (Mergers and acquisitions which are outside of the ordinary course of business require Court approval in the bankruptcy court.)  A court, in its analysis, should insure that revenues are maximized and that the best interests of the debtor's estate, creditors and equity holders are furthered. See Matter of Tiara Motorcoach Corp., 212 B.R. 133 (Bankr. N.D. Ind.1997).

8.	The U.S. Trustee submits that requiring an initial competing bid to be at least 5% higher than the proposed offer is a great hurdle for any interested buyer to overcome to obtain the assets and may have a chilling effect upon other potential bidders.

9.	The Debtors cite two bankruptcy cases from this District as supportive authority or examples of cases where Break Up Fees and Expense Reimbursements provisions were approved as incentives to stalking horse. See In re Gemini Cargo Logistics, Inc., Case No. 06-10870-BKC-AJC and In re Piccadilly Cafeteria , Case No. 03-27976-BKC-RAM. What the Debtors have failed to advise this Court was that in both of those cases either the proposed incentives such as break-up fees were reduced or were so minimal, it was a non issue.  In Gemini Cargo, the amount of the proposed break up fee was reduced to the amount equal to the reasonable out of pocket fees and expenses. Case No. 06-10870-BKC-AJC (DE# 78, 191). In Piccadilly Cafeteria, the Debtors cite a September 14, 2004 order (which is not attached to the Sale Motion), but this was a sale of minimal value with a $10,000 break-up fee. However, what the Debtors did not disclose was that the Court in Piccadilly Cafeteria previously entered an Amended Order on December 4, 2003 addressing a $54 million sale, which break up fee had been changed from the original proposal by eliminating an

separate expense reimbursement component. Case No. 03-27976-BKC-RAM (DE# 67, 174).[2] The cases cited by Debtors show that the bid protection the Stalking Horse Bidder and the Debtors seek is unreasonable relative to the proposed purchase price and will discourage other interested parties from bidding on the assets and is therefore not in the best interests of the estates.

10. The U.S. Trustee does not object to a <u>reasonable</u> fee to compensate the initial bidder for its costs, subject to Court approval that such fee is reasonable. However, based upon the size of the break up fee, expense reimbursement and overbid protection, it appears that the fees in this case will only deter other truly interested parties from bidding on the assets and would not be in the best interests of the estate. The U.S. Trustee submits that the overbid protections including the break up fee and initial overbid as proposed will negatively impact the bidding process and are contrary to the purpose of the break up fee, that the amount is excessive and unreasonable and should be reduced

## OTHER OBJECTIONS

11. In addition to the bid procedure/bid protection objection, there are several other concerns that need further clarification and which may make the proposed sale objectionable. First, the sale provides no carve out for unsecured creditors. Next, the sale provides that Arch Glass can elect to remain as an additional back up bidder, but fails to state at what price. Is it the price of the initial bid, last highest bid or third highest bid by any bidder?

12. The Debtors need to provide further clarification regarding the liabilities being assumed by the purchase. Is the purchaser providing any form of security and indemnification to the

---

[2] The Debtors also cite to unpublished orders out of the Southern District of New York, which orders are not attached to the Sale Motion. Upon a review of the court dockets, the break up fees were not at issue in each of the cases. Instead, the Courts approved the break up fees with little to no discussion on the reasonableness of the fees.

Debtors for the assumption of the claims? A more thorough analysis and description of what liabilities are being assumed must be provided in order to properly determine if the proposed sale is in the best interests of the estate.

WHEREFORE, the United States Trustee objects to Debtors' Sale Motion and respectfully requests that the issues raised in this Limited Objection be addressed before an Order is entered granting the Debtors' Sale Motion and to grant such other relief as the Court deems just and proper.

DATED: December 15, 2009.

        Donald F. Walton
        United States Trustee
        Region 21

        /s/
        Ariel Rodriguez, Trial Attorney
        Florida Bar No.: 160253
        U.S. Trustee's Office
        51 SW 1st Ave.
        Miami, FL 33130
        Phone: (305) 536-7285
        Fax: (305) 536-7360

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been served on the following parties on December 15, 2009, electronically through CM/ECF, on parties having appeared electronically in the instant matter and that a copy hereof shall be served by U.S. Mail, postage prepaid, on parties not appearing electronically as listed on the attached service list:

Paul J. Battista, pbattista@gjb-law.com, gjbecf@gjb-law.com

Michael I Goldberg michael.goldberg@akerman.com, charlene.cerda@akerman.com

Heather L Harmon HHarmon@gjb-law.com, gjbecf@gjb-law.com

Jeffrey T. Kucera jeffrey.kucera@klgates.com,

Peter H Levitt plevitt@shutts-law.com

Thomas M. Messana tmessana@mws-law.com,

Miami-Dade County Tax Collector mdtcbkc@miamidade.gov

Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov

Kristopher E Pearson kpearson@stearnsweaver.com,

Chad P Pugatch cpugatch.ecf@rprslaw.com

Patricia A Redmond predmond@stearnsweaver.com, jmartinez@swmwas.com;rross@swmwas.com

Mark S Roher mroher@adorno.com, mcalderon@adorno.com;mroher.ecf@rprslaw.com

Michael L Schuster mschuster@gjb-law.com, gjbecf@gjb-law.com;mpacheco@gjb-law.com

Gregory L Scott gscott@nasonyeager.com

Paul Steven Singerman singerman@bergersingerman.com, efile@bergersingerman.com

Erica S Zaron cao.bkc@miamidade.gov

/s/
Ariel Rodriguez, Trial Attorney