**ORDERED in the Southern District of Florida on** Jan. 27, 2010



John K. Olson, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division
### www.flsb.uscourts.gov

In re:

Case No. 09-36232-BKC-JKO

ARCH ALUMINUM
& GLASS CO, INC., et al.[1].

Chapter 11
(Jointly Administered)

_____/

### ORDER GRANTING DEBTORS' MOTION FOR ORDER
### PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE AND
### FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, AND 6006: (A)
### APPROVING ASSET PURCHASE AGREEMENT; (B) AUTHORIZING SALE OF
### SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL
### LIENS, CLAIMS, ENCUMBRANCES; AND (C) AUTHORIZING ASSUMPTION AND
### ASSIGNMENT OF CERTAIN LEASES AND EXECUTORY CONTRACTS

THIS MATTER came before the Court on January 14, 2010 at 9:30 a.m. (the

"Sale Hearing") upon the Debtors' Motion for entry of orders, pursuant to 11 U.S.C. §§ 105, 363,

and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, (a) approving that certain Asset Purchase

---

[1]    The jointly administered debtors are: Arch Aluminum & Glass Co., Inc; AAG Holdings, Inc.; Arch Aluminum and Glass International, Inc.; Arch Aluminum, L.C.; and AWP, LLC.

Agreement, dated December 2, 2009 (the "Original Purchase Agreement"), by and among the

Debtors, as sellers, and Arch Glass Acquisition Corporation, as buyer (the "Stalking Horse

Bidder"), as amended [*see* C.P. # 177], for the purchase and sale of the Purchased Assets (as

defined below), (b) authorizing the Debtors to execute and deliver the Original Purchase

Agreement, (c) establishing bidding procedures for the sale of the Purchased Assets free and

clear of all liens, claims, encumbrances and interests pursuant to Section 363(f) of the

Bankruptcy Code, (d) authorizing the Debtors to provide certain "stalking horse" bid protections

to the Stalking Horse Bidder, (e) scheduling a hearing to consider approval of, and approving,

the sale of the Purchased Assets (the "Asset Sale") pursuant to Sections 363 and 365 of the

Bankruptcy Code free and clear of all liens, claims, encumbrances and interests pursuant to the

Original Purchase Agreement to the Stalking Horse Bidder or the highest and best bidder, if

applicable, at an Auction (as defined below), (f) authorizing the Debtors' assumption and

assignment of certain executory contracts and unexpired leases in connection therewith at the

Sale Hearing, (g) approving the form and manner of notice thereof, and (h) granting related relief

(the "Sale Motion") [C.P. # 29]. This Court (i)  having entered an order dated December 22,

2009 (the "Bid Procedures Order") [C.P. # 144] authorizing the Debtors to conduct, and

approving the terms and conditions of, an auction (the "Auction"), and bidding procedures to

consider higher or otherwise better offers for the Purchased Assets, establishing a date for the

Auction, and approving, *inter alia*, (a) the overbid procedures set forth in the Bid Procedures

Order, (b) the protections afforded the Stalking Horse Bidder, and (c) the form and manner of

notice of the Asset Sale; (ii) having established the date of the Sale Hearing; (iii) having

jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157(b)(2) and 1334; (iv) having considered the Sale Motion, the relief requested

2

therein, and the responses thereto, if any, and determining that such matters are core proceedings in accordance with 28 U.S.C. § 157(b); (v) noting in the record at the Sale Hearing the appearance of all interested parties and all responses and objections to the Sale Motion; (vi) considering the record of the Sale Hearing and all other pleadings and proceedings in these Chapter 11 cases, including the Sale Motion; and (vii) after due deliberation and sufficient cause appearing therefore, hereby makes the following Findings of Fact and Conclusions of Law:

**IT IS HEREBY FOUND AND DETERMINED** as follows:

A.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.       To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.       Proper, timely, adequate and sufficient notice of the Sale Motion, the Auction and the Sale Hearing has been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court, and the Bid Procedures Order.  The Debtors also gave due and proper notice of the assumption and assignment of each Assigned Contract and each Designated Remaining Contract to each non-debtor counter-party under each such contract.  No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts or any Designated Remaining Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Original Purchase Agreement or the Purchase Agreement (as defined below) is necessary.

D.    A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion has been afforded to all interested persons and entities, including, without limitation: (i) all entities who claim any interest in or lien upon the Purchased Assets; (ii) all parties to the Assigned Contracts assumed and assigned pursuant to this Order (collectively, including any Designated Remaining Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Original Purchase Agreement and the Purchase Agreement (as defined below), the "Assumed Contracts"); (iii) all governmental taxing authorities who have, or as a result of the sale of the Purchased Assets may have, claims, contingent or otherwise, against the Debtors; (iv) all parties who filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (v) all creditors of the Debtors; (vi) all interested governmental, pension and environmental entities and all utilities serving the Debtors; (vii) the Office of the United States Trustee ("UST"); and (viii) all entities that heretofore expressed to Debtors an interest in purchasing the Purchased Assets.  Any and all other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information by the Debtors to make an informed judgment on whether to bid on the Purchased Assets.  The prepetition and postpetition process employed by the Debtors and their advisors in connection with the Asset Sale was fair, adequate and reasonable in order to obtain the highest and best price possible for the Purchased Assets.

E.    The Sale Motion was duly and properly served on all required persons and entities in accordance with the Bid Procedures Order.

F.    The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring them to sell the Purchased Assets and assume and assign any Assumed Contracts under sections 363 and 365 of the Bankruptcy Code outside of a plan of

4

reorganization, and such actions are appropriate and reasonable exercises of the Debtors' business judgment and are in the best interests of the Debtors, their estates and their creditors.

G.      Through the prepetition and postpetition sale process employed by the Debtors, the Debtors afforded all interested potential purchasers a full, fair and reasonable opportunity to make a higher and better offer to purchase the Purchased Assets.

H.      On January 8, 2010, the Debtors received a competing bid to acquire the Purchased Assets from Arch Aluminum & Glass Enterprises, Inc., an affiliate of Sun Capital Fund IV (the "Purchaser"). Thereafter, the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "Committee") and the Prepetition Lenders, determined that the bid from the Purchaser constituted a Qualified Bid under the terms of the Bid Procedures Order.

I.      On January 13, 2010, the Debtors and their advisors conducted the Auction of the Purchased Assets between the Stalking Horse Bidder and the Purchaser. At the conclusion of the Auction, the Debtors, in consultation with the Committee and the Prepetition Lenders, determined that the Qualified Bid of the Purchaser was the highest and best bid for the Purchased Assets, and therefore the Purchaser was the Successful Bidder for the Purchased Assets. The Court finds and determines that such determination is fair and reasonable.

J.      Prior to and after the Auction, the Debtors and the Purchaser, in consultation with the Committee and Prepetition Lenders, amended the terms and provisions of the asset purchase agreement submitted by the Purchaser in connection with its Qualified Bid. On January 14, 2010, the Debtors and the Purchaser executed an amended and restated asset purchase agreement (the "Purchase Agreement"), which Purchase Agreement was filed with this Court. (C.P.#235). [2]

---

[2]      All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement, as hereinafter defined.

K.    The Qualified Bid of the Purchaser to acquire the Purchased Assets and the Assumed Contracts pursuant to the Purchase Agreement is the highest and best offer received by the Debtors. The Purchase Price set forth in the Purchase Agreement is fair, is in the best interest of the Debtors' estates and constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets.

L.    Without an expeditious sale of the Purchased Assets free and clear of liens, claims, encumbrances and interests, and the assumption and assignment of the Assumed Contracts, there will be a substantial diminution in the value of the Debtors and their assets to the detriment of their creditors and other parties in interest.

M.    The Purchaser is not an insider, as that term is defined in section 101(31) of the Bankruptcy Code and the decisions thereunder. The Purchaser is a purchaser in good faith, as that term is used in the Bankruptcy Code and the decisions appurtenant thereto, and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code with respect to all of the Purchased Assets and the Assumed Contracts. The Purchase Agreement was negotiated and entered into in good faith, based upon arm's length bargaining and without collusion. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) to the Purchase Agreement.

N.    The Debtors have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority necessary to consummate the transactions contemplated by the Purchase Agreement. No consents or

6

approvals, other than as expressly provided for in the Purchase Agreement, are required by the Debtors to consummate such transactions.

O.      The Debtors have advanced sound business reasons for seeking to enter into the Purchase Agreement and to sell the Purchased Assets and assume and assign the Assumed Contracts, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets and to execute and deliver the Purchase Agreement to the Purchaser.

P.      The terms and conditions of the Purchase Agreement, including the total consideration to be realized by the Debtors pursuant to the Purchase Agreement, are fair and reasonable and the transactions contemplated by the Purchase Agreement are in the best interests of the Debtors' creditors and bankruptcy estates.

Q.      A valid business purpose exists for approval of the transactions contemplated by the Sale Motion pursuant to section 363(b) of the Bankruptcy Code.  The transfer of the Purchased Assets and the Assumed Contracts from the Debtors to the Purchaser is a legal, valid and effective transfer of the Purchased Assets and the Assumed Contracts notwithstanding any requirement for approval or consent by any person.

R.      Except for the limited amount of Assumed Liabilities, as defined in the Purchase Agreement, the Purchaser is not assuming any of the debts, liabilities or obligations of the Debtors. The Debtors and Purchaser do not have any common controlling shareholders or senior management.  The Purchase Agreement is being entered into in good faith and not to hinder, delay or defraud any creditors of the Debtors. The Debtors shall not in any way be liable or responsible for any liabilities, commitments or obligations in any way related to the Purchased Assets or the Assumed Contracts arising from and after the Closing Date.  The Purchaser is not

merely a continuation of the Debtors or their estates.  There is no continuity of enterprise between the Debtors and the Purchaser. The Purchaser is not a successor to the Debtors or their estates and the transactions contemplated in the Purchase Agreement do not amount to, or otherwise constitute a consolidation, merger or de facto merger of the Purchaser and the Debtors or their estates.

S.    The assumption and assignment of the Assumed Contracts, including any Designated Remaining Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Purchase Agreement, if any, and pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

T.    The Debtors and Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f), in connection with the sale and assumption and assignment of the Assumed Contracts to the extent provided under the Purchase Agreement, including any Designated Remaining Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Purchase Agreement.  The Purchaser is able to, and has demonstrated at the Sale Hearing adequate assurance of future performance with respect to any and all Assumed Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code, including any Designated Remaining Contracts that are assumed and assigned to the Purchaser pursuant to the terms of the Purchase Agreement. Except as provided by in the Purchase Agreement, the Assumed Contracts, including any Designated Remaining Contracts that are assumed and assigned to the Purchaser pursuant to the

8

terms of the Purchase Agreement, are assignable notwithstanding any provisions contained therein to the contrary.

U.       On January 11, 2010, the Debtors filed their Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases and (II) Cure Costs Related Thereto (C.P.# 208)(the "Cure Notice").

V.       On January 13, 2010, the Debtors filed their Notice of Filing Amended Exhibit to Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases and (II) Cure Costs Related Thereto (C.P.# 226)(the "Amended Cure Notice").

W.       The Amended Cure Notice sets forth certain revisions to the treatment of the Assumed Contracts contained in the Cure Notice, and the amounts, if any, proposed to be paid by the Debtors to cure any and all defaults under the Assumed Contracts contained in the Amended Cure Notice.

X.       With the exception of the objection filed by The FEIT 1984 Trust (C.P.#232)(the "Trust Objection"), no objections were or have been filed to the Amended Cure Notice.  At the Sale Hearing, the Court overruled the Trust Objection for failure to prosecute.

Y.       The Court hereby finds and determines that the amounts set forth in the Amended Cure Notice are and shall be Determined Cure Costs in connection with the Assumed Contracts contained therein.  No further amounts shall be necessary to be paid in connection with the assumption and assignment of the Assumed Contracts set forth on the Amended Cure Notice.

Z.       In the absence of a stay pending appeal, the Purchaser will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Purchase Agreement at any time on or after entry of this Order and cause has been shown as

to why this Order should not be subject to the stay provided by Fed R. Bankr. P. 6004(h) and 6006(d).

AA.    The sale of the Purchased Assets outside of a plan of reorganization pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.

**THEREFORE, BASED UPON THE FOREGOING**, the Court **ORDERS AND ADJUDGES** as follows:

1.    The relief requested in the Sale Motion is granted in its entirety.

2.    The Court has jurisdiction to hear and adjudicate the Sale Motion and to grant the relief requested therein pursuant to 28 U.S.C. §§157 (b)(1) and 1334(b).  Venue of these cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.    This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

4.    The statutory predicates for the Sale Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

5.    The Purchase Agreement and the transactions contemplated thereby be, and hereby are, approved and the Debtors are hereby authorized and empowered and directed to enter into, and to perform their obligations under, the Purchase Agreement in accordance therewith or any amendment entered into in accordance with this Order and to execute and perform such agreements or documents and take such other actions as are necessary or desirable to effectuate the terms of the Purchase Agreement.

6.    All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of

the Sale Hearing. To the extent any such objections, responses or requests for continuance were not otherwise withdrawn, waived, or settled, they, and all reservations and rights contained therein, are overruled and denied.

7.      The Debtors shall be, and hereby are, authorized, empowered and directed, pursuant to sections 105 and 363(b) of the Bankruptcy Code, to sell the Purchased Assets to the Purchaser upon delivery of the consideration in accordance with the Purchase Agreement and completing all other deliveries required under the Purchase Agreement. The Debtors shall be, and hereby are, authorized, empowered and directed, pursuant to section 365 of the Bankruptcy Code, to assume and assign the Assumed Contracts to the Purchaser upon delivery of the consideration in accordance with the Purchase Agreement and completing all other deliveries required under the Purchase Agreement (except as otherwise provided in the Purchase Agreement with respect to the Designated Remaining Contracts). With the sole exception of the Assumed Liabilities, pursuant to section 363(f) of the Bankruptcy Code, the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts pursuant to the Purchase Agreement and this Order shall be free and clear of any and all liens, claims, encumbrances, interests and other liabilities, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, including without limitation, any right of setoff, recoupment, netting or deduction (collectively, the "Liens and Encumbrances"). All such Liens and Encumbrances on and in respect of the Purchased Assets

11

shall attach to the proceeds of the sale to be disbursed pursuant hereto or further order of this Court.

8.      On the Closing Date, each of the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens and Encumbrances of any kind against the Purchased Assets as such liens and encumbrances may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing Liens and Encumbrances on the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens or other interests which the person or entity has with respect to the Purchased Assets, then the Purchaser and/or the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets.

9.      This Order shall be binding upon and govern the acts of all persons or entities, including without limitation, all filing agents, recording agencies, secretaries of state and all other persons and entities who may be required by operation of law to accept, file, register or otherwise record or release any documents or instruments.

10.      Subject to the delivery of the consideration in accordance with the Purchase Agreement and completing all other deliveries required under the Purchase Agreement, effective as of the Closing, (a) the sale of the Purchased Assets and the Assumed Contracts by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets and the Assumed Contracts notwithstanding any requirement for approval or consent by any person and shall vest Purchaser with all right, title and interest in and to the Purchased Assets and the

12

Assumed Contracts, free and clear of all Liens and Encumbrances pursuant to section 363(f) of the Bankruptcy Code and (b) the assumption of any Assumed Liabilities by Purchaser shall constitute a legal, valid and effective delegation of any Assumed Liabilities to Purchaser and shall divest the Debtors of all liability with respect to any such Assumed Liabilities.

11.     The Purchaser is hereby generally released from any and all claims and defenses that the Debtors or any party claiming through the Debtors may have against the Purchaser, other than claims against the Purchaser arising under the Purchase Agreement.

12.     All utilities or entities that provide or have provided water, electricity, gas, oil, telephone and similar services in respect of the Purchased Assets shall be enjoined and prohibited from interrupting, canceling or terminating such services from and after the Closing Date as a result, directly or indirectly, of claims against the Debtors, including for unpaid charges.

13.     All persons or entities, presently or on or after the Closing Date with access to or in possession or control of some or all of the Purchased Assets are directed to provide access to and surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

14.     The sale of the Purchased Assets to Purchaser under the Purchase Agreement will constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and all applicable law.

15.     Purchaser is hereby granted and is entitled to the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code, including with respect to any transfer of the Assumed Contracts as part of the sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

13

16.    The Purchaser has satisfied all requirements under sections 365(b)(1) and 365 (f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts. Pursuant to section 365(b)(1)(B) of the Bankruptcy Code, the Debtors or the Purchaser, as applicable and as required by and pursuant to the terms of the Purchase Agreement, shall satisfy as and when due all Determined Cure Costs in respect of the Assumed Contracts, including as set forth in the Amended Cure Notice, which is hereby approved in all respects. The determination of Determined Cure Costs and the payment thereof to the non-debtor counter-parties to the Assumed Contracts shall be in accordance with the terms and procedures set forth in the Purchase Agreement and this Order. The Debtors, the Purchaser, and all counter-parties to the Assumed Contracts are hereby authorized to take any actions necessary or appropriate to effectuate the Purchase Agreement in respect of payment of Determined Cure Costs, including as set forth in the Amended Cure Notice. The assumption by the Debtors of any Assumed Contracts and the assignment of the Assumed Contracts to the Purchaser, as provided for or contemplated by the Purchase Agreement, is hereby authorized and approved subject to the occurrence of the Closing Date under the Purchase Agreement. Any Assumed Contracts shall be in full force and effect and assumed by the Debtors and assigned and sold to the Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code subject and pursuant to the Purchase Agreement as of the Closing Date. As a result of the procedures for the determination and payment of the Determined Cure Costs as set forth in the Purchase Agreement, this Order and the Amended Cure Notice, all defaults under the Assumed Contracts are deemed cured and the Debtors have complied with sections 365(f)(2)(A) and 365(b)(1)(A) of the Bankruptcy Code. The Assumed Contracts shall be transferred and assigned to, and following the Closing remain valid and binding and in full force and effect for the benefit of, the Purchaser in accordance with

14

their respective terms. Any and all provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract constitute unenforceable anti-assignment provisions which are void and of no legal force or effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each Assumed Contract have been satisfied and, upon Closing (or as otherwise provided in the Purchase Agreement with respect to the Designated Remaining Contracts), the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract, subject to any contrary terms of the Purchase Agreement. Upon assignment of the Assumed Contracts to the Purchaser, no default shall exist under any Assumed Contract and no non-Debtor party to any Assumed Contract shall be permitted to declare a default by the Purchaser under such Assumed Contract or otherwise take action against the Purchaser as a result of any Debtors' financial condition, bankruptcy or failure to perform any of such Debtors' obligations under any Assumed Contract. Upon entry of this Order and the assumption and assignment of the Assumed Contracts, the Purchaser shall be deemed in compliance with all terms and provisions of the Assumed Contracts. Pursuant to section 365(k) of the Bankruptcy Code, from and after the assignment of any Assumed Contracts on the Closing Date, neither the Debtors nor their bankruptcy estates shall have any liability under any Assumed Contracts for breach or otherwise and the Debtors and their estates shall be relieved of any liability for any breach of any Assumed Contracts occurring after such assignment. The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing, as further provided in the Purchase Agreement.

17.     Each non-Debtor party to an Assumed Contract shall, as of the Closing, be forever barred and enjoined from asserting against the Purchaser, any of the Purchased Assets, the Debtors, or the Debtors' bankruptcy estates:  (a) any default existing as of the Closing Date if such default was not raised or asserted in a timely manner prior to the entry of this Order; or (b) any objection to the assumption and assignment of such non-Debtor party's Assumed Contract. The assignment of an Assumed Contract to the Purchaser will not cause a default or otherwise allow the non-Debtor party thereto to terminate or adversely affect the Debtors' or the Purchaser's rights thereunder.

18.     Notwithstanding anything to the contrary, at any time and from time to time on or before one (1) Business Day prior to the Closing, the Purchaser may, by written notice to Debtors, (i) elect to exclude any one or more contracts from the Transactions (*i.e.*, make any Assigned Contract or Designated Remaining Contract an Excluded Contract), (ii) have any Designated Remaining Contract made an Assigned Contract, or (iii) designate any Assigned Contract as a Designated Remaining Contract.  Any Excluded Contract shall no longer be an Assumed Contract to be assigned to the Purchaser hereunder.  There shall be no adjustment to the Purchase Price as a result of the Purchaser's election to exclude or include any one or more contracts from the Transactions pursuant to Section 5.03(a) of the Purchase Agreement except that the Purchaser shall not be required to make any payments for Cure Costs or any other amounts for Excluded Contracts.

19.     At the time of Closing, the Debtors shall assume (to the extent required) pursuant to section 365(a) of the Bankruptcy Code and then assign and sell to the Purchaser pursuant to sections 365(f) and 363(b), (f) and (n) of the Bankruptcy Code, and the Purchaser shall assume and accept from the Debtors, to the extent provided in Section 2.02 of the Purchase Agreement,

all of the Assigned Contracts. The Purchaser shall have the right, in its sole discretion, to direct the Debtors to assume and assign to the Purchaser any one or more schedules, appendices, annexes or other attachments to any Contract as directed by the Purchaser, in its sole discretion, and irrespective of whether such Contract or any other schedules, appendices, annexes or other attachments to such Contract are assumed and assigned to the Purchaser to the extent permitted by applicable law. Any such schedules, appendices, annexes or other attachments to any Assumed Contract that are so assumed and assigned shall be Assumed Contracts.

20.    Notwithstanding anything to the contrary, pursuant to written notice of the Purchaser to the Debtors no later than 90 days after the Closing and filed with the Bankruptcy Court, the assumption and assignment of each Designated Remaining Contract set forth in such notice shall be deemed effective as of such date. Any Designated Remaining Contract for which Purchaser does not provide such notice shall be designated and become an Excluded Contract. Any such Designated Remaining Contract that becomes an Excluded Contract as set forth herein shall be deemed rejected by the Debtors effective as of the date of this Order under Section 365 of the Bankruptcy Code, and the counterparty to such rejected Excluded Contract shall have a period of thirty (30) days after such Designated Remaining Contract becomes an Excluded Contract to file a rejection damage claim related thereto. With respect to any Designated Remaining Contract, the Purchaser shall compensate the Debtors for the ordinary costs related thereto first arising after the Closing and actually incurred or accrued by the Debtors after the Closing in performing the obligations under such Designated Remaining Contracts until the date a final determination is made by the Purchaser with respect to the treatment of such Designated Remaining Contract (in any event, not to exceed 90 days after the Closing). With respect to any lease of real property that is a Designated Remaining Contract, Purchaser shall have a general

17

license to enter and possess the premises subject to such lease of real property until the date such lease becomes an Assigned Contract or an Excluded Contract. With respect to any lease of real property that is a Designated Remaining Contract, upon and after the Closing and until such lease becomes an Assigned Contract or an Excluded Contract, Purchaser shall pay all post-Closing Liabilities under such lease or with respect to the premises leased under such lease or the business conducted at such premises, except to the extent that any such Liabilities are Excluded Liabilities under the Purchase Agreement.

21. With respect to any Excluded Contract which has not been rejected following the Closing upon written notice(s) from the Purchaser to the Debtors with a copy to counsel to the Committee, as soon as practicable, the Debtors shall take all actions reasonably necessary to assume and assign to the Purchaser pursuant to Section 365 of the Bankruptcy Code any contracts set forth in the Purchaser's notice(s); provided that any applicable Cure Cost shall be satisfied by the Purchaser and provided further that the provisions shall not restrict or limit the Debtors' right to reject any such Excluded Contract.

22. This Order and the Purchase Agreement shall be binding upon, and shall inure to the benefit of, the Debtors and the Purchaser, and their respective successors and assigns, including without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if these cases are converted from Chapter 11.

23. This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Purchase Agreement and to resolve any dispute concerning this Order, the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this Order, including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and

extent of the Purchased Assets and any Assumed Contracts and all issues and disputes arising in connection with the relief authorized herein.

24.     The provisions of this Order are nonseverable and mutually dependent.

25.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self executing.  In the absence of any entity obtaining a stay of this Order pending appeal, the Debtors and the Purchaser are free to close under the Purchase Agreement in accordance herewith.  In the absence of any entity obtaining a stay of this Order pending appeal, if the Debtors and the Purchaser close under the Purchase Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protection of section 363(m) of the Bankruptcy Code as to all aspects of the transactions pursuant to the Purchase Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

26.     The sale approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

27.     The Debtors and the Purchaser are authorized and empowered to take all actions (including any pro-rations, adjustments and similar items required by the Purchase Agreement) to close the transactions contemplated by and in accordance with the terms of the Purchase Agreement, and any amendment thereto approved in accordance with this Order, and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Purchase Agreement and this Order, including without limitation, bills of sale, assignments, releases, certificates, affidavits and similar documents required of the Debtors pursuant to the Purchase Agreement. The Debtors and each other person having duties or responsibilities under the Purchase

19

Agreement, any agreements related thereto or to this Order, and their respective directors, officers (including the Debtors' chief restructuring officer), managing partners or members, general partners, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Purchase Agreement and the schedules annexed thereto, to carry out all of the provisions of the Purchase Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Purchase Agreement, and any related agreements; to take any and all actions contemplated by the Purchase Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Purchase Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, stockholders, or partners, and with like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, and partners of such entities. All such additional agreements, documents, and instruments shall be deemed to be "related agreements" for purposes of this Order. The Secretary or any Assistant Secretary of Debtors is hereby authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the

transactions contemplated by the Purchase Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers or managers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Florida and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Purchase Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

28.     Nothing in this Order purports to excuse the Purchaser or any other person or entity from compliance with any and all applicable state and federal regulatory laws.

29.     Pursuant to sections 105 and 363 of the Bankruptcy Code and with the sole exception of the counterparties to the Assumed Liabilities solely with respect to the Assumed Liabilities, any and all creditors of the Debtors shall be barred, estopped and enjoined from taking any action of any kind against the Purchaser or the Purchased Assets on account of any claim against the Debtors or any Purchased Asset.

30.     The Purchaser is not a successor to the Debtors or their estates by reason of any theory of law or equity and the Purchaser shall not assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates (whether direct or indirect, liquidated or unliquidated, choate or inchoate, or contingent or fixed), except as otherwise

21

expressly provided in the Purchase Agreement. Subject to the provisions of the Purchase Agreement, the transfer of the Purchased Assets shall be free and clear of all prepetition Taxes. Neither the purchase of the Purchased Assets by Purchaser, nor the subsequent operation by Purchaser of any business previously operated by the Debtors, shall cause Purchaser to be deemed a successor in any respect to the Debtors' business operations within the meaning of any revenue, pension, ERISA, tax, labor, employment, product liability, consumer protection or environmental, or any other state or federal rule or regulation. Except as specifically and expressly provided for in the Purchase Agreement, the Purchaser shall not be liable for any claims against the Debtors, including, but not limited to, the Debtors or any of their predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, whether known or unknown, now existing or hereafter arising, whether fixed or contingent and however arising, including without limitation, (a) claims related to the development, maintenance or operation of the Purchased Assets, and (b) claims related to alleged violations of local, state or federal environmental laws, pollution emissions or other discharges of hazardous substance or containments by the Debtors, any predecessor of the Debtors or any prior owner of the property being sold to Purchaser.

31.     Effective upon the Closing, all entities, including, but not limited to, the Debtors' creditors, employees, former employees and shareholders, utilities, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, including such officials maintaining any authority relating to environmental, labor and health and safety laws, and their respective successors or assigns, shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of

22

any kind against the Purchaser or the Purchased Assets as alleged successor with respect to any Liens or Encumbrances arising out of or related to the Purchased Assets or the Debtors.

32.    The Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser without further action of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to and effectuates the Purchase Agreement, and provided further, that the Prepetition Agent has consented (and at least one (1) Business Day prior notice is provided to counsel to the Committee) to any such waiver, modification, amendment or supplement that changes (a) the consideration related to the transactions contemplated by the Purchase Agreement, (b) the timing of the Closing Date, or (c) the manner in which obligations are to be paid by the Purchaser, including without limitation, any amounts reserved or escrowed

33.    The failure specifically to include any particular provisions of the Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing, and provided further, that the Prepetition Agent has consented (and at least one (1) Business Days prior notice is provided to counsel to the Committee) to any such waiver, modification, amendment or supplement that changes (a) the consideration related to the transactions contemplated by the Purchase Agreement, (b) the timing of the Closing Date, or (c) the manner in which obligations are to be paid by the Purchaser, including without limitation, any amounts reserved or escrowed, in accordance with paragraph 32 herein.

34.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the transaction contemplated by the Purchase Agreement.

35.     To the extent that any of Debtors' employees are offered employment with the Purchaser, such employees' employment with the Debtors shall not be deemed to have been terminated solely for purposes of the Worker Adjustment and Retraining Notification ("WARN") Act, notwithstanding any WARN Act notice(s) provided by the Debtors.

36.     To the extent any provisions of this Order conflict with the terms and conditions of the Purchase Agreement, this Order shall govern and control.

37.     For a period of 30 days following the Closing, so as to enable the Debtors and any successor to the Debtors to comply with their obligations (a) to pursue any and all claims and causes of action under chapter 5 of the Bankruptcy Code, except with respect to such claims and causes of action that constitute Purchased Assets under the Purchase Agreement (collectively, the "Excluded Avoidance Actions"), (b) to reconcile claims filed in these Chapter 11 cases (other than any claims that constitute Assumed Liabilities under the Purchase Agreement), (c) to prepare and file monthly operating reports and tax returns, and (d) to otherwise comply with their duties and obligations under the Bankruptcy Code, the Purchaser shall provide the Debtors and their representatives (and any successor to the Debtors) the following: (x) reasonable access to the financial and other books and records of the Debtors (including in electronic format and including allowing the Debtors to copy such books and records) applicable to all time periods up to and including the Closing that relate to the foregoing; and (y) reasonable access to the financial management of the Purchaser to discuss the foregoing; provided, however, that any such access or furnishing of information shall be conducted at the sole cost and expense of the Debtors, during normal business hours, under the supervision of the applicable Purchaser's

24

personnel and in such a manner so as not to interfere with the normal operations of the Business or the Arch Canada Business. In addition, for a period of 30 days following the Closing and only during normal business hours, under the supervision of the applicable Purchaser's personnel and in such a manner so as not to interfere with the normal operations of the Business or the Arch Canada Business, the Purchaser shall provide to the Debtors access to one room at the Purchaser's location in Tamarac, Florida.

38.     Subject to the payment of any of the Debtors' obligations under the Purchase Agreement upon consummation of the sale of the Purchased Assets with the Purchaser (which the Debtors are hereby authorized to do), including through the reserve of a portion of the Purchase Price as required by the Purchase Agreement, the Debtors shall be authorized and shall promptly after the Closing pay or reserve for (as indicated) the following amounts from the Purchase Price: (a) pay or reserve for any and all claims asserted to be secured by valid, perfected liens or security interests in the Purchased Assets senior to the liens of the Prepetition Lenders, (b) pay the Postpetition Obligations incurred by the Debtors under and pursuant to the Interim Order Authorizing Debtors In Possession to Obtain Secured Post-Petition Financing and Authorizing Use of Cash Collateral dated January 8, 2010, [D.E. 196] (the "Interim DIP Order"), and the *Final Order (1)(A) Authorizing Debtors-In-Possession to Obtain Secured Postpetition Financing With Priority Set Forth Herein, (B) Approving Agreements Relating To The Foregoing; (C) Authorizing Use of Cash Collateral; And (D) Granting Related Relief And (2) Approving Settlement And Compromise Between The Debtors, The Official Committee of Unsecured Creditors And the Petition Lenders* (the "Final Order"), (c) pay the respective amounts of the Carve Outs, Mandatory Fees and Break Up Fee and Expense Reimbursement set forth in the Interim DIP Order and/or the Final Order to the extent not already paid or reserved as

25

of such date, (d) reserve an amount equal to $750,000 to be used to pay the fee owed to Piper Jaffray & Co., Inc. as the Debtors' investment banker, which payment shall be made by the Debtors upon consummation of the sale of the Purchased Assets, (e) pay an amount equal to the Fixed Settlement Payment (as defined in the Final Order) to the General Unsecured Creditors Agent (as defined in the Final Order), and (f) pay to the Prepetition Agent for the benefit of the Prepetition Lenders (each as defined in the Final Order) an amount equal to (i) the lesser of (A) the then remaining balance of the proceeds of the sale of the Purchased Assets plus cash on hand of the Debtors net of the above amounts and net of any unpaid but accrued expenses as of the Closing Date to the extent such accrued expenses are within the applicable limitations of the Budget (as defined in the Final Order), or (B) the aggregate unpaid balance of the Prepetition Obligations (as defined in the Interim DIP Order and the Final Order) owed to the Prepetition Lenders as of such date. The Court retains jurisdiction to resolve any and all disputes in regard to such payments or reserves.

39.     This Order shall become effective immediately upon the entry of the Final Order by this Court.

###

Prepared by:
Paul J. Battista, Esq.
Genovese, Joblove & Battista, P.A.
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
(305) 349-2300; Fax (305) 349-2310